4

SOFÍA PÉREZ SEGOVIA, Petitioner and Appellee, *v.* DISTRICT COURT OF SAN JUAN, HON. JESÚS A. GONZÁLEZ, JUDGE, Respondent; CRISTÓBAL PUIG ALBONS ET AL., Interveners and Appellants.

No. 9628.    Argued February 10, 1948.—Decided June 23, 1948.

*Damián Monserrat, Jr., Gabriel de la Haba,* and *Rafael Baragaño, Jr.,* for appellants.    *E. Martínez Rivera* and *L. Blanco Lugo,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Sofía Pérez Segovia sued for liquidation of the community partnership between her and her former husband.    The plaintiff alleged that she and Cristóbal Puig Albons had been divorced in 1947 after 25 years of marriage; that in the divorce proceedings the district court had decreed she was the innocent spouse; and that the property belonging to the partnership amounted to more than $250,000.    Shortly after·

filing her complaint for liquidation, the plaintiff filed a motion praying that, while the suit was pending, the defendant Puig be ordered to pay her $500 a month for support, $5,000 for a trip from Spain to Puerto Rico and $5,000 for litigation expenses.

Mr. Justice Marrero, sitting as *juez de turno* of this Court, issued a writ of certiorari on petition of the wife to review the order of the district court denying this motion. The *juez de turno* set aside the order of the district court. He held that (1) this was a proper case for certiorari, citing *Mercado Riera* v. *Mercado Riera*, 152 R. F. 2d 86 (C.C.A. 1st, 1945) ; and that (2) the petitioner was entitled to receive from her former husband an advance payment for maintenance and litigation expenses, to be charged against her share in the community property, when her share was determined by the final judgment in the liquidation suit. The case is here on appeal from the judgment of the *juez de turno*.

I

The first question presented is whether the *juez de turno* erred in issuing the writ of certiorari. This involves interpretation of the Act of March 10, 1904, now §§ 670–4 of the Code of Civil Procedure. Section 670 defines certiorari as follows:

"A writ issued by a superior to an inferior court requiring the latter to send to former a certified copy of some proceeding therein pending, or the record and proceedings in some cause already terminated in cases where procedure is not according to the course of the law, and to complete the proceedings when the lower court refuses to do so upon erroneous grounds."

We assume that this case involves a question of substantive law.[1] The *juez de turno* seems to have made the same

---

[1] For generations the courts have been plagued with the problem of fitting cases into the two different categories of substance and procedure. Judge Magruder in *Sampson* v. *Channell*, 110 F. 2d 754 (C.C.A. 1st, 1940), cert. denied 310 U. S. 650, states at p. 755, footnote 2, that "procedural rules are those which concern methods of presenting to a court the operative facts upon which the legal relations depend; substantive rules, those

assumption. Relying on the *Mercado* case, he issued the writ on the theory that certiorari lies under § 670 to correct errors of substantive law.

The position of the *juez de turno* is supported by the *Mercado* case. There the Circuit Court held that under § 670 this Court (p. 94) "has jurisdiction under the insular statute [§ 670] to issue writs of certiorari to correct errors of inferior courts regardless of the nature of the error alleged." The Circuit Court asserts at p. 93 that § 670 does not distinguish between questions of procedure and substantive law. It concludes that the provision of the statute that

which concern the legal effect of those facts after they have been established." But substance and procedure are not "mutually exclusive categories with easily ascertainable contents." *Sibbach* v. *Wilson & Co.*, 312 U. S. 1, 17, dissenting opinion. There are many cases which fall within the borderland between substance and procedure and are rationally capable of classification within either category. *Sampson* v. *Channell, supra*, p. 757, footnote 4. Moreover, for various reasons, occasionally the same subject matter is considered in one field of law as procedural, and in another field as substantive. See Cook, "Substance" and "Procedure" in the Conflict of Laws, 42 Yale L. J. 333; Restatement, Conflict of Laws, §§ 584, *et seq.; Sibbach* v. *Wilson & Co., supra;* 2 Moore's Federal Practice, 2d ed., par. 1.04; pp. 22–32, par. 2.09, pp. 432–56; *Sampson* v. *Channell, supra; Cities Service Co.* v. *Dunlap*, 308 U. S. 208; 1942 Annual Survey of American Law, pp. 819–829.

This case could perhaps be regarded as within the twilight zone between substance and procedure. The argument for calling this question procedural would be somewhat as follows: The motion of the wife raises no issue of substantive right. She does not contend that she is entitled to support while the liquidation suit is pending. Rather she argues that at this stage of the proceeding she is entitled to move for an advance payment, to be charged against her ultimate share in the community property, for maintenance and litigation expenses. That is to say, the problem is whether she is entitled to intermediate relief or must wait for final judgment. As thus stated, the question, although perhaps not purely procedural in nature, might have sufficient procedural aspects to justify issuance of the writ even if certiorari lies under § 670 only to review errors of procedure or jurisdiction.

However, this argument is not particularly persuasive. The petitioner does not make it. Instead, she and the *juez de turno* apparently concede that the question here is substantive, not procedural. And they rely on the *Mercado* case in which the Circuit Court held that under § 670 certiorari lies to correct errors of inferior courts regardless of whether the errors are in matters of procedure or substantive law. We therefore think this is an appropriate case to settle this important question of local law.

certiorari lies "where procedure is not according to the course of the law" means that certiorari may issue (p. 94) "where the inferior court has failed to proceed according to, in other words, failed to follow, the course of the law."

Whether certiorari lies under § 670 to correct errors of substantive law, or whether under that Section certiorari is confined to revision of errors of procedure or jurisdiction, is a question of local law. We therefore examine this problem bearing in mind that we are at liberty to disagree with the Circuit Court on this question. *De Castro* v. *Board of Comm'rs.*, 322 U. S. 451; *Díaz* v. *P. R. Ry., Light & Power Co.*, 63 P.R.R. 776, 783–85; *Torres* v. *Roldán*, 67 P.R.R. 342.

We cannot agree with some of the statements of the Circuit Court in the *Mercado* case. That Court says (p. 93) "we do not find any case in which the Supreme Court of Puerto Rico has construed the certiorari act with the common-law distinction between adjective and substantive law in mind . . .". But there are dozens of cases in which this Court has held that under § 670 certiorari is available only to review errors of procedure or jurisdiction and cannot be used to correct errors of substantive law.[2]

The Circuit Court also relies on the use of the word *"procedimiento"* in the Spanish text of § 670 in reaching its conclusion that the Section covers questions of substantive law. But the records of the Legislature show that the Act of 1904 was originally passed in English. Under § 13 of

---

[2] *Fenández* v. *The District Court*, 6 P.R.R. 202; *Díaz* v. *The District Court*, 9 P.R.R. 526; *Estate of Núñez* v. *District Court*, 14 P.R.R. 20; *Mora* v. *Foote*, 16 P.R.R. 18; *Alvarez* v. *López, District Judge*, 17 P.R.R. 912; *López* v. *Córdova Dávila*, 18 P.R.R. 1; *National Surety Co.* v. *Rossy*, 19 P.R.R. 897; *Manrique* v. *Diez*, 22 P.R.R. 167; *P. R. Am. Tobacco Co.* v. *Municipal Judge of Río Piedras*, 32 P.R.R. 347; *Agostini* v. *Municipal Court of San Juan et al.*, 33 P.R.R. 780; *De Castro* v. *District Court, etc.*, 40 P.R.R. 741; *Robles* v. *District Court*, 43 P.R.R. 266, 44 P.R.R. 940; *National City Bank of N. Y.* v. *District Court*, 45 P.R.R. 847; *Cafeteros de Yauco, Inc.* v. *District Court*, 46 P.R.R. 555; *Cabassa* v. *Court*, 47 P.R.R. 351; *Great Am. Ind. Co.* v. *District Court*, 47 P.R.R. 882; *Smallwood* v. *District Court*, 53 P.R.R. 707; *Pedroza* v. *District Court*, 58 P.R.R. 769; *Mangual* v. *District Court*, 61 P.R.R. 405.

the Civil Code if any conflict existed between the two versions, it would have to be resolved in favor of the original English version. However, we are of the view that (1) the Spanish translation of § 670 is substantially satisfactory and (2) in any event, as hereafter noted, the key phrase in § 670 is "the course of the law"—translated in the statute as *"las prescripciones de la ley"*—rather than the word *"procedimiento"*.

The Circuit Court likewise found support for its view that under § 670 certiorari could be utilized to review errors of substantive law in three of our cases; i.e., *Méndez* v. *Soto Nussa, District Judge,* 13 P.R.R. 366; *Núñez* v. *Soto Nussa, District Judge,* 14 P.R.R. 190; and *Sánchez et al.* v. *Cuevas Zequeira,* 23 P.R.R. 47. But none of those cases is a holding to that effect.

*Méndez* v. *Soto Nussa, supra,* involved a judgment by a district court on appeal from the municipal court. As the amount involved was less than $300, no appeal could be taken to this Court. The defendant petitioned us for certiorari to review the order of the district court admitting in evidence two promissory notes. We discharged the preliminary writ of certiorari. We held that (p. 370) "the writ of certiorari does not lie in cases like the present. It was never intended to reach the admission or exclusion of evidence."

There are countless expressions in these cases similar to our language in *People* v. *District Court,* 44 P.R.R. 681, 689: "The writ of certiorari lies where there is no other effective remedy in the ordinary course of law and some question of jurisdiction or procedure is involved, the issuance of the writ being within the discretion of the court. The rule is easy to state. The difficulty lies in its application. There are cases so clear, so typical of jurisdiction or procedure, that no doubt arises as to them, but there are others which require careful consideration in order to determine their nature."

To the same effect, Toledo Alamo, *El Certiorari Clásico en Puerto Rico,* XVI Rev. Jur. U.P.R. 315, 330–32, and cases cited in footnotes 52–59. In this article Professor Toledo makes an able and exhaustive study of all our certiorari cases from 1904 to 1947; but through no fault of his, that part of his discerning study relating to the scope of the writ becomes obsolete by virtue of this opinion.

The *dictum* at pp. 369–370 of the *Méndez* case, as quoted by the Circuit Court in the *Mercado* case at p. 94, was not intended to open the door to certiorari "regardless of the nature of the error alleged." That discussion was principally for the purpose of showing, as we have frequently held, that even where appeal is available, certiorari will be granted if appeal would be inadequate, ineffective or tardy. That is to say, appealability of a judgment or order does not necessarily prevent issuance of a writ of certiorari. But in the *Méndez* case we finally concluded that certiorari will issue solely to correct errors of procedure or jurisdiction.

*Núñez* v. *Soto Nussa, supra,* involved a suit for injunction by the manager of a theatrical enterprise to restrain the defendant singer from breaching her contract to sing at certain public performances. This Court granted certiorari to review the orders granting a preliminary injunction and fining the defendant for contempt.

We concluded that the orders granting the plaintiff a preliminary injunction and fining the defendant for contempt were void. We therefore set them aside in the certiorari proceeding as (p. 194) "the transgression of its jurisdiction by a court is one of the most common grounds for relief by certiorari".

The language quoted by the Circuit Court at p. 94 of the *Mercado* case from the *Núñez* case at p. 192 again refers to the use of certiorari even where appeal lies, and has no bearing on the availability of certiorari to review errors which do not fall within the categories of procedure or jurisdiction. Indeed, we indicated in *López* v. *Córdova Dávila,* 18 P.R.R. 1, that the *Núñez* case stood for the rule that only errors of procedure or jurisdiction were reviewable by certiorari.

The Circuit Court at pp. 94–5 of the *Mercado* case quotes our language in *Sánchez et al* v. *Cuevas Zequeira, supra,* 51–52. But here again we were reiterating the rule that certiorari will issue even if the judgment or order is appeal-

10

able. Neither the holding of that case, which involved procedural questions, nor its language indicated that certiorari lies under § 670 to review substantive questions of law.

Finally, the Circuit Court saw some significance in the fact that in many cases this Court (p. 94) "has issued certiorari to review alleged errors without any discussion of the nature of the error alleged as adjective or substantive." It cannot be gainsaid that in many cases we have issued certiorari under § 670 without discussing the nature of the errors. And occasionally we have reviewed errors which are difficult, if not impossible, to classify as procedural. See, for example, *Battistini* v. *The District Court of Ponce*, 8 P.R.R. 562; *Comas* v. *District Court*, 39 P.R.R. 689; *Porrata* v. *District Court*, 53 P.R.R. 140; *Palermo* v. *District Court*, 58 P.R.R. 191; *Riviere* v. *District Court*, 60 P.R.R. 717; *Ramírez* v. *District Court*, 64 P.R.R. 507; *Valdés* v. *District Court*, 67 P.R.R. 288; *Latoni* v. *Municipal Court*, 67 P.R.R. 130. Indeed, in the *Mercado* case itself, 62 P.R.R. 350, 373, and in *Núñez* v. *Soto Nussa*, *supra*, the errors, although characterized by us as "transgressions" or "excess" of jurisdiction, on analysis seem to be substantive in nature. Nevertheless, whenever we have explicitly discussed the question, we have at least given lip-service in the most unmistakable manner to the rule that certiorari lies under § 670 solely to review errors of procedure or jurisdiction.

The net effect is that in the *Mercado* case the Circuit Court advances the following propositions: (1) The construction of § 670 by this Court does not distinguish between errors of substance and procedure; (2) the word *"procedimiento"* in the Spanish text of § 670 sheds some special light on the meaning of the Section; (3) three of our cases support the rule that certiorari lies to review errors of substantive law; (4) there is some significance in the fact that in certain cases we have issued certiorari without discussing the nature of the alleged error. But we find ourselves unable to agree with these statements.

However, our disagreement with these phases of the opinion of the Circuit Court does not settle the problem. We are still faced with the fundamental proposition that the Circuit Court after careful consideration unequivocally held that § 670 on its face authorizes certiorari to correct errors, irrespective of their substantive or procedural nature. We therefore deem it our duty to re-examine our cases holding the contrary.

After constitutions and statutes have been in effect for many years and have been interpreted by the courts in various cases, the tendency inevitably is to read the cases rather than the constitution or statute itself when a question arises as to its meaning. But if we are to perform adequately the task we have set for ourselves of re-examining the doctrine laid down in our earlier cases we must return to the Act of 1904 and read it without the gloss our cases have placed on the statute.

Reading the Act alone, we are struck, as was the Circuit Court, by the fact that there is nothing in the statute referring to procedural questions as such. Nor is there the remotest reference in § 670 to jurisdiction. In our cases, in order to justify issuance of certiorari where technically the court has jurisdiction but exercised it erroneously, we have occasionally as have other courts used the vague and undefined concept that the lower court acted in "excess" of its jurisdiction. This phrase has no precise legal content. The only satisfactory statement that can be made about it is that it is broader than error of jurisdiction or lack of jurisdiction. *Abelleira* v. *District Court of Appeal, Third District*, 109 P.2d 942 (Calif., 1941); *Olson* v. *District Court of Salt Lake County*, 71 P.2d 529, 534 (Utah, 1937). In a number of states the writ lies to correct errors in excess of jurisdiction because the statute specifically uses this phrase in defining certiorari. But our statute contains no reference to procedural questions, jurisdiction or excess of jurisdiction. We cannot escape the conviction that the concepts

of procedure and jurisdiction, plus the restriction of the statute to those two types of cases, were read into § 670 by the early opinions of this Court without any warrant therefor in its language.

Study of our early cases in which this restrictive rule was evolved discloses how we fell into this error. We did not discuss the meaning of § 670, phrase by phrase. Nor did we trace it to its legislative source. Instead, we cited cases from other jurisdictions holding that certiorari lies only to correct errors of procedure or jurisdiction. But those cases should never have been accepted uncritically. There are many state cases holding that certiorari lies to review substantive questions. There simply is no general rule in the United States as to the nature of the errors reviewable by certiorari. "Varying constitutions, statutes and judicial decisions furnish innovations, enlargements and contractions of the common law aspects of the remedy [of certiorari] that are kaleidoscopic when viewed in mass." 1943 Annual Survey of American Law, p. 815.

The records of the Legislature show no legislative history which could shed light on the meaning of the Act of 1904. We know only that the bill originated in the House of Delegates, and was passed substantially in the form introduced on the same date as the Legislature enacted the Code of Civil Procedure, which established new modes of procedure in our courts.

Despite the lack of any legislative history, the text of the Act itself discloses that it was framed to conform as closely as possible to the ancient writ of certiorari at common law. Pound, Appellate Procedure in Civil Cases, states that (pp. 60–1) "As the King's Bench and Common Pleas had a general superintendence of all courts of inferior jurisdiction, they could remove proceedings in those courts by *certiorari* in order that the judges might inspect the record and see that the courts kept within the limits of their jurisdiction and proceeded *according to the rules of the common*

*law."* (Second italics ours). And at p. 288 "Certiorari was at common law the mode of review of proceedings not *according to the course of the common law."* (Italics ours). Our statute is couched in the same terms. It provides for review where action of the lower court "is not according to the course of the law." In providing for certiorari in this civil law jurisdiction, it was of course necessary to drop the adjective "common". Otherwise our Act is an almost verbatim statutory version of the ancient common law writ.

The most illuminating case we have found with reference to the nature of the errors reviewable by certiorari at common law is *Jackson* v. *The People,* 9 Mich. 111 (1860).[3] In that case the court concludes that at common law (p. 118) "the office of the writ is considered as reaching all errors of law."

The Michigan court concedes that a series of New York decisions exist holding that certiorari lies at common law only to review the jurisdiction of a lower court. But it traces the English cases and statutes which show how the New York courts obtained this misconception of common law certiorari. In England, after the writ was evolved by the common law courts, statutes were enacted depriving litigants of the common law right of certiorari in certain types of cases. The English courts nevertheless held that even in those cases certiorari would still lie for want of jurisdiction. These last cases were mistakenly read by some state courts as restricting the scope of certiorari at common law as a general proposition. But as the *Jackson* case demonstrates, the original concept of certiorari at common law was to correct errors where the lower court did not act "according to the course of the [common] law"; i. e., failed to apply correctly the law, substantive or adjective, to the facts of the case.

---

[3] This case has been cited with approval by us in *Mayagüez Sugar Co.* v. *Court of Tax Appeals,* 60 P.R.R. 737, 744–45, and *López* v. *Tugwell, Governor,* 62 P.R.R. 471, 473.

14

Although sometimes not in terms as explicit as the *Jackson* case, other courts have taken substantially the same view. *Farmington River Water Power Company* v. *County Commissioners*, 112 Mass. 206 (1873); *Board of Supervisors* v. *Magoon*, 109 Ill. 142 (1884); *Harris* v. *Barber*, 129 U. S. 366 (1888); *Jacksonville, T. & K. W. Ry. Co.* v. *Boy*, 16 So. 290 (Fla., 1894); *State* v. *Guinotte*, 57 S.W. 281 (Mo., 1900); *State* v. *Reynolds*, 89 S.W. 877 (Mo., 1905); *Ex parte Dickens*, 50 So. 218 (Ala., 1909); *Hartz* v. *Murfin*, 129 N.W. 25 (Mich., 1910); *Conners* v. *City of Knoxville*, 189 S.W. 870 (Tenn., 1916); *In re Morgan*, 176 N.W. 606 (Mich., 1920); *Appeal of Fredericks*, 280 N.W. 464 (Mich., 1938); *Young* v. *Stoutamire*, 179 So. 797 (Fla., 1938); *Belk's Dept. Store, Inc.* v. *Guilford County*, 23 S.E. 2d 897 (N.C., 1943); *White* v. *White*, 36 A. 2d 661 (R.I., 1944); *Gatlinburg Beer Regulation Committee* v. *Ogle*, 206 S.W. 2d 891 (Tenn., 1947); *Frink* v. *Orleans Corporation*, 32 So. 2d 425 (Fla., 1947). And cf. Rule 38, par. 5(*b*), final clause, Revised Rules of the Supreme Court of the United States, 1939, 306 U. S. 685, 719; *Mayagüez Sugar Co.* v. *Court of Tax Appeals, supra,* pp. 744–45, citing with approval *Wilmington Trust Co.* v. *Helvering*, 316 U. S. 164.

In the light of the aforesaid cases and the language of our statute, the Circuit Court was on sound ground in holding in the *Mercado* case that the provision of § 670 that certiorari lies "where procedure is not according to the course of the law" means that certiorari may issue (p. 94) "where the inferior court has failed to proceed according to, in other words, failed to follow, the course of the law." The short of it is that whether a court has acted "according to the course of the law" is not a procedural question. The "course of the law" is the key phrase for our purposes. And that phrase on its face means the substantive content of the law. In the Spanish version of § 670 the English clause "where procedure is not according to the course of the law" is translated as *"en que el procedimiento adoptado no esté de acuerdo*

*con las prescripciones de la ley."* While this translation is reasonably adequate, the meaning of the English version becomes even clearer if it is translated as *"en que no se ha procedido de acuerdo con las disposiciones de ley."*

We recognize that this matter is not free from difficulty. The cases are not uniform. Even within a single jurisdiction the courts have at times wavered on this point. And statutes have contracted or narrowed the common law concept of certiorari. But our Legislature, in providing for review when the lower court did not act "according to the course of the law", did its best to duplicate the common law writ in its original version for use in this jurisdiction. There could be no substantial doubt on this score were it not for our cases. But there is no warrant in the statute for the cases. The latter cannot be permitted to stand in the way of clearly expressed legislative policy.

As the Circuit Court indicates in the *Mercado* case at p. 93, footnote 8, the last clause of § 670 enables us to order the lower court "to complete the proceedings when the lower court refuses to do so upon erroneous grounds." That clause has been construed to give us the option of either ordering the lower court to complete the proceedings or to complete the proceedings ourselves by an order or judgment of our own in an appropriate case. *Subirana et al.* v. *Padilla, District Judge,* 12 P.R.R. 72, 75; *Agostini* v. *Municipal Court of San Juan et al.,* 33 P.R.R. 780; *Mercado* v. *District Court,* 62 P.R.R. 350, 373. See *Toledo, supra,* pp. 345–6. The power specifically vested in this Court by the last clause of § 670 to enter a final order disposing of the case reinforces our view that the writ goes beyond errors of procedure and jurisdiction: completion of proceedings usually involves disposition on the merits.

The Legislature has provided for review by this Court of questions of substantive law in particular types of cases by special certiorari. Act No. 32, Laws of Puerto Rico,

1943;[4] Section 12, Act No. 17, Laws of Puerto Rico, 1945. And see *Mayagüez Sugar Co.* v. *Court of Tax Appeals, supra,* and § 5, Act No. 169, Laws of Puerto Rico, 1943. The argument might therefore be made that by providing for review of substantive questions in these particular cases by special certiorari, the Legislature showed its intention to confine classical certiorari to errors of procedure or jurisdiction. The answer is obvious. These statutes were enacted in the light of our cases restricting § 670. They were passed to avoid the effect of those cases in special cases. These statutes did not amend § 670 and do not prevent reversal of our cases which fettered § 670 with restrictions not found in the statute.

In the *Mercado* case the Circuit Court intimates at p. 95 that we indicated in the *Méndez* case that if a question of jurisdiction is involved, certiorari lies as a matter of right. The *Méndez* case does not so hold and § 670 makes no such distinction. On the contrary, irrespective of the nature of the error, the writ is discretionary. And we need hardly add that we propose to utilize it sparingly and only for compelling reasons. The fact that we now hold that certiorari lies to correct all types of errors of law, adjective or substantive, has not changed the rules with reference to the circumstances under which we shall exercise our discretion to issue the writ.

If we have had any fixed star in our judicial constellation, it has been that certiorari would issue under § 670 only to review errors of procedure or jurisdiction. This doctrine was so firmly imbedded in our jurisprudence that our first impression was that it was difficult, if not impossible, under the rule of *stare decisis* to dislodge it. But no property or other vested rights have accrued under our prior interpretation of § 670. Cf. *Mayagüez Lt., P. & I. Co.* v. *Tax Court,* 65 P.R.R. 28, 33–34. And a decision of the court above us

---

[4] For cases under Act No. 32, see Toledo, *supra*, p. 348, footnote 129. Act No. 32 was repealed by Act No. 380, Laws of Puerto Rico, 1946.

precipitated the issue. After long hesitation and careful consideration, we concluded we were duty-bound to re-examine the question. Moreover, in holding that we must discard our cases which have read into the statute restrictions not found in its text, we have not engaged in "judicial legislation". On the contrary, to scrape off the barnacles encrusting the statute and thereby to restore the statute to its pristine form if anything is to undo prior "judicial legislation" by this Court.[5]

Our cases holding that under § 670 certiorari lies only to correct errors of procedure and jurisdiction are expressly overruled. We hold, as did the Circuit Court in the *Mercado* case, that § 670 does not distinguish between questions of procedure and substantive law, and that this Court has the discretionary power to issue writs of certiorari to correct errors of inferior courts regardless of the nature of the error alleged.

## II

On the merits, the judgment of the *juez de turno* reads in part as follows:

"WHEREAS, in view of its allegations, the "Motion requesting support and litigation expenses" should not be considered as a petition for support under Section 109 of the Civil Code, 1930 ed., but rather as a motion filed by a divorced wife praying that from the property of the community partnership which existed between her and her husband—property which she alleges remained entirely in the hands of the husband—she be given an advance payment of certain sums in order to pay for her necessities while the principal suit for liquidation of the community property was pending, as well as sums for travel from the country where she resides to Puerto Rico and for payment of part of the fees of the attorneys who represent her. (That this is so becomes even clearer from a perusal of the motion for reconsideration of June 27, 1947.)

---

[5] "Judicial legislation" is a slippery phrase. It is frequently a semantic device used by those who do not like the result reached by a court engaged in the task of ascertaining the meaning of a statute. Those who find the result more pleasing call it "judicial interpretation".

"WHEREAS, having considered the said motion of the plaintiff, as already noted, as a petition for an advance payment of part of her share in the dissolved but not liquidated community partnership, it is not necessary that we determine if in Puerto Rico a wife divorced on the ground of separation—against whom a judgment of divorce has been entered by virtue of a complaint filed by her husband, but with the wife considered pursuant to law as the innocent spouse with all the rights flowing from that status as a result of the divorce (Section 96 of the Civil Code, 1930 ed., as amended by Act No. 62 of April 29, 1942, p. 582)—does or does not have the right to receive the support provided in Article 109 of the Code. Cf. *Planas* v. *Chambers*, 64 P.R.R. 53, 55.

"WHEREAS, although it is true that there is no statute in this jurisdiction which clearly and specifically provides for support for a divorced wife from the property belonging to the community partnership which existed between her and her former husband, or from the income, it is no less true that in harmony with Section 1325 of the Civil Code, 1930 ed., 'Support shall be given out of the property owned in common to the surviving spouse and to his or her children, pending the liquidation of the inventoried estate and until their share has been delivered to them, but it shall be deducted from their portion in so far as it exceeds what they should have received as fruits or income', the said Section referring solely to the surviving spouse without doubt due to the fact that it was taken from Spain and that in Spain divorce *a vínculo matrimonii* did not exist as we know it in Puerto Rico, from which it may easily be deduced that this was a lapsus or legislative inadvertence not to mention in that Section, or in a similar Section, the divorced wife, whether or not she be the innocent spouse.

"WHEREAS, although it is true that in the said motion the prayer is for support and litigation expenses, it is no less true that from its allegations, from the additional text of the motion for reconsideration and from the phraseology of Section 1325, *supra,* it is clearly evident that what the plaintiff really requested was an advance payment against her share in the community property, to be charged against the latter, the label which she gave her motion being of course of no importance. (See Rule 81(*b*), which although not applicable to support cases (*Vázquez* v. *De Jesús,* 65 P.R.R. 846, 847, footnote 1) always applies to ordinary civil actions, such as the principal suit for

liquidation of community property instituted herein by the petitioner against the intervenors.)

"WHEREAS, under these conditions it was the duty of the lower court to reject the contention of the interveners and to hear testimony as to whether or not any property belonging to the dissolved community partnership existed, as well as testimony with reference to the necessities of the wife, and once it was established that community property existed and that the petitioner lacked means for her support, the court was required to grant her the advance payment requested in proportion to the amount of the property and the social position of the interested parties. Manresa, *Comentarios al Código Civil,* Vol. 9, 1904 ed., p. 735.

"THEREFORE, the order of June 24, 1947 and the order on reconsideration of July 29, 1947 of the District Court of San Juan in Civil case No. 4329, *Sofía Pérez Segovia* v. *Cristóbal Puig Albons* and *María Luisa Puig Pérez* are vacated."

Here again we are in agreement with the *juez de turno.* We add only that if the phrase in the statute "surviving spouse" were read literally, it would exclude a divorced wife from its provisions. But we are justified in not reading this particular statute literally in the light of its background and to avoid defeating the manifest intent of the Legislature. See *Parrondo* v. *L. Rodríguez & Co.,* 64 P.R.R. 418; *People* v. *Del Valle,* 60 P.R.R. 180; *People* v. *López,* 54 P.R.R. 279, 285; *Standard Commercial Tobacco Co., Inc.* v. *Tax Court,* 68 P.R.R. 829; *Rullán* v. *Buscaglia, et al.,* 168 F. 2d 401.

The judgment of the *juez de turno* will be affirmed.

Mr. Justice Marrero did not participate herein.